May it please the Court, Felicia Ellsworth on behalf of Plaintiff Appellant Lisa Ricchio. I'd like to reserve three minutes of my time for rebuttal, if I may. You may. There are two separate errors in the judgment below that require reversal. First, the District Court simply neglected to address Ms. Ricchio's claims that the Shangri-La defendants directly violated the Trafficking Victims Protection Act by harboring or maintaining her at the Shangri-La motel. Neither of the District Court's two electronic orders address the allegations in the complaint that the Shangri-La defendants are directly liable under the TVPA as perpetrators. And this error alone requires reversal. The allegations of the complaint show that the Shangri-La defendants knew that Ms. Ricchio was being held against her will, that they personally witnessed her abuse at the hands of Mr. McLean, and that they knew or were willfully blind to Mr. McLean's intentions to force Ms. Ricchio into service as a commercial sex worker. What do you have for a factual allegation that takes you to that last step? I mean, I have no trouble following your point to the extent that your factual allegations indicate that they knew or should have known that there was a lot of violence going on between this man and this woman, and indeed that she probably was being held down there or in a relationship against her will. But how do we get from there to an understanding where what factual allegations take us from allegations that there is abusive conduct going on between two people to allegations that in fact the object of this abusive conduct is to, in effect, provide someone to engage in sex in the trade? So I would point to three separate allegations in the complaint, Your Honor. The first is in paragraph 28 of the complaint, which is the allegation that when Ms. Ricchio attempted to escape captivity, the first evening of her captivity, and she encountered Ms. Patel, informed her she was being held against her will and informed her of the abuse. The conduct of Ms. Patel, as alleged, is that she smiled, brushed Ms. Ricchio away, and turned to walk away. Ms. Patel does not come away looking good based on your allegations, but how does she know that there is something that goes beyond holding this woman against her will to an object of establishing her as an actor in the trafficking? I would suggest that the conduct of Ms. Patel in that particular allegation suggests that she is complicit in whatever it is that Mr. McLean is doing. This is not just looking surprised or scared but neglecting to take any affirmative action to call the authorities. The allegations are that she seemed not at all surprised by what was happening. She smiled. She turned away. Is it established that she understands English? It is not alleged that she does not. There's no suggestion that as the operators of this motel there was any inability to understand English. And again, I don't think it's what Ms. Patel understands would be a defense, I think. It doesn't absolve the pleading stage or solve the pleading problem. But you say she was complicit in whatever it is McLean was doing. That can't possibly be the standard, that by saying, okay, that to what appears to be one thing, and that is that a woman is being held and abused, you're therefore complicit in something that is quite a step beyond, which is that she is being ready to go into commercial sex trafficking or forced labor. And so I would turn then next to paragraph 36 of the complaint, which is the allegation that when Mr. McLean and Ms. Riccio were in the parking lot of the motel, they encountered Mr. Patel. And Mr. McLean and Mr. Patel shared a conversation where there was a discussion about making money and getting this thing going again. Reasonable inference from that allegation is that the making money and the getting things going was a prostitution act. Is there anything in the complaint that indicates that Patel and McLean were previously partners or joint venturers in any prostitution endeavor? There are allegations that Mr. McLean had stayed at the motel for a lengthy period of time in the past, and then there are the allegations based on descriptions from neighbors and locals of the Shangri-La Motel as a haven for prostitution and exploitation. Do I take that as a no? I asked you a very specific question. Is there anything about McLean and Patel being joint venturers or partners in a prostitution or sex trafficking enterprise? There's not a specific allegation to that effect, but I think it's a reasonable claim. Then how can we give that, the interpretation that you want to the statement, we've got to get this thing going again? That indicates that they are going to resume something that went on before. And you've just told me there's no allegation in the complaint that they engaged in that conduct jointly before. Well, the allegations in the complaint, which must be viewed as a whole, and the reasonable inferences that the court can draw from them, are, we suggest, sufficient to show that a venture for purposes of engaging in trafficking of Ms. Riccio existed. And again, I'm pointing to the fact that the Patels and Mr. McLean were acquainted with one another and Mr. McLean had stayed there for a lengthy period of time. And the descriptions of neighbors and locals of the hotel as a haven for this type of activity. Were those allegations on information and belief that this is a well-known house of prostitution, this particular motel? Yes, Your Honor, on information and belief. It would seem to me that you could go to the local police and find out one way or another and find out if there were any claims of such a relationship between Patel and McLean that there are sources of information in arrest records or investigation records. Why is this on information and belief? This is in furtherance of Justice Souters and Judge Selya's question. Your Honor, at the point the complaint was filed, the information and belief has, you know, the information that we had. We think that that is sufficient to get by the pleading stand. But people investigate before they file lawsuits. And certainly investigation was undertaken. And I think that the allegations of the complaint, particularly when viewed as a whole, are sufficient to allow a court to draw a reasonable inference, particularly in light of the TVPA's knowledge standards, which doesn't require, which has a reckless history. But are you asking, one, you open by saying the district court simply didn't even consider our direct allegations. It went to the other allegations about venture and so on. Correct. And on reconsideration, it made an error in finding that the victim already has to have been a victim of sex trafficking. And it's true. Almost all the case law goes against that commercial already in the past. But then you've got your two other prongs of your case. You have your direct and you've got the more indirect participation in a venture and getting a benefit from it. Are you really asking us to decide the direct question, or are you asking us to remand to the district court to make a determination on those facts? Either result would be fine, Your Honor. I think certainly it's very clear the district court didn't address the direct claims at all in the reconsideration or in the original. Those are viable claims. We think that Ms. Riccio, that the Shangri-La defendants harbored Ms. Riccio in reckless disregard of the fact that she would be forced to engage in commercial sex activity. And so that's a sufficient basis to send it back so that it can be considered fully. All right. So now she's going to be forced to engage in commercial sex activity. He says to her at some point, you're going to be in my escort service. And she says, you mean I'm going to have to prostitute myself? And he says to her, but what do the Patels have to do with that bit of knowledge? Well, again, the statement by Mr. McClain, as alleged, is that they would make a lot of money off of her. So there's more than Mr. McClain involved in that. Excuse me, off of her? The allegation in the complaint. I thought the allegation was that the words were something to the effect, let's get this thing going or whatnot. But I didn't recall that there was any reference to the victim in that statement. That's correct, Your Honor, Justice Souter. The statement about they making money off of her was a statement from Mr. McClain to Ms. Riccio. And there's nothing in the complaint that indicates that either of the Patels ever knew of that statement. No, there's not, Your Honor. Nor is there anything from which you can draw a reasonable inference that they includes the Patels. They obviously means that McClain has someone else in mind. Correct, Your Honor. But I don't see how you can jump to the conclusion that he must mean the Patels. Well, the reasonable inference that we would suggest the court needs to draw is from all of the allegations of the complaint, which include the Patels' reactions and conduct to witnessing Ms. Riccio's abuse at the hands of Mr. McClain. And in addition, the allegations of paragraph 39 that Ms. Patel, when she entered the room with Mr. McClain and Ms. Riccio, and observed Ms. Riccio's state, demanded additional money from Mr. McClain. I point to the reference made in the amicus brief filed by the Freedom Network of a guilty plea in another case involving another Mr. Patel, unrelated, a motel owner who was found liable, who pled guilty for demanding additional money for pimping activity that was coerced. Very similar facts. I'm not sure I understand the reference to additional money. She demanded money. The allegation is she demanded additional money in paragraph 39. And you say that meant something more than rent for additional days? A very reasonable inference from that, we believe, is that it could mean additional money in exchange for not calling the police, in exchange for turning a blind eye, as the district court said, to Ms. Riccio's captivity. And that then supports the inference, what inference? And that supports the inference that the Patels and Mr. McClain were engaged in a venture together, that they were associated in fact, as the language of the statute is. Or the Patels are going to profit by keeping silent about it, but they're not going to engage in it. But profiting by keeping silent about a venture. The fact goes to your indirect allegation. It is, and again, we think we've sufficiently pled that. I see my time is up. I'll address it in rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Michael Resnick on behalf of the Eteliz-Bijang Incorporated doing business at the Shangri-La Motel, as well as Ashwin Kumar and Seema Patel. Your Honors, Ms. Riccio's brief, as well as the amicus, is often focused on matters that are not relevant to the issue before this Court. The amicus goes to cite statistics from the Department of Justice. The brief- Well, the statistics can be read as evidence supporting the plausibility of the inference that she's asking us to draw. I mean, it's sort of an unusual case in that sense. The brief also takes great length to assign a legal error to the Court below. I believe it's improper. I believe it's unnecessary. This Court's standard of review is de novo, and the Court is to engage in the plausibility analysis that was pronounced in Chwambli, refined in Iqbal. It's a two-pronged process. I notice, Counsel, that you make no effort in your brief to defend the District Court's rationale. You instead defend this case based on an application of the- I understand that there is no cause of action here. That's correct, Your Honor. I believe that there are many, many conclusory statements, legal conclusions, statements that have no factual underpinnings that need to be cleansed from this complaint. Okay. Can we agree that when the District Court denied reconsideration on this theory that you had to have proven actual past commercial sexual activity, that that was contrary to the rule that almost every other circuit court has adopted? I agree, Your Honor. My understanding is that the First Circuit has not ruled on it, but the dominant- I would also agree that they did make direct allegations against the Patels, and the District Court did not discuss that. Well, Your Honor, I think that the motion for- Yes or no, please. I would agree with that. I would agree with that. The District Court did discuss the, you know, helping out type allegations about venture and benefit and thought that those were not enough. So even on its rationale, we have this plausibility issue to deal with. That's right, Your Honor. And I believe-well, I just would like to speak about the motion for reconsideration for a moment because I think it needs to be viewed in the context of the conspiracy and attempt count. And there are no factual allegations in this complaint that give rise to an agreement between the Patels. There is no substantial overact. You know, you're arguing this as though it's a summary judgment motion as opposed to a 12B6. Is there enough here to let them do a bit more discovery, which perhaps they could have done before they filed the suit? I would like to get some of the data about was this Motel engaged with him in some sort of prior illicit scheme to traffic women? But there are no such- Or should it now be resolved and they don't get to proceed to the next stage? Well, there are no allegations that the Patels had any knowledge of what occurred between Mr. MacLean and Ms. Riccio before their arrival at the hotel. There is the allegation that Ms. Riccio- Why does that matter? Well, the allegation is that this was all part and parcel of his purpose to indoctrinate her into the world of sexual exploitation. And it certainly began when he asked her to come from Maine to visit him at the hospital. There's no allegation that they knew anything about that. There's no allegation that they had any knowledge of actually what occurred. No, no. It's what they see when the couple are there at the motel and being told, I'm being held captive against my will. Help me? Well, I would agree that paragraph 28 and the resuscitation of paragraph or the repetition of paragraph 28 and paragraph 35 is the battleground here. There's very few allegations about what Mr. Patel saw. There is the reference to a high five. There is the reference to some amorphous let's make money again. There is the allegation that he viewed her in poor health. But the real battleground is what Ms. Patel saw that evening, the first evening, when it is alleged that she asked for help, that she wanted to escape, and then Ms. Patel ignored her. But the only reasonable inference that can be inferred from this court is that the Patels knew, should have known, or recklessly disregarded that there was a domestic dispute, that there was an act of domestic violence, that there was an assault. And was Ms. Patel's actions, if true, the definition of morality? Is it something that we would wish a stranger would act or respond to a daughter or a son or a family member? No. But that's now why we're here. We're here. Did they have enough information? Are there allegations that there was enough in front of them that they knew, should have known, or recklessly disregarded an act of human trafficking or forced labor for purposes of sex? There's not enough. In your mind, their case would have to turn on some prior relationship between McLean and the Patels, such that the Patels would be on notice that he was doing it again? I think that's part of it. I think that that would certainly help them. But at the end of the day, if the court were to hold that that situation in paragraph 28, what Ms. Patel is alleged to have perceived, is enough to find indirect liability. No, no, no, no. Direct liability. Direct or indirect liability under the TVPRA. It would be enough that any manager or any employee of any hotel witnesses an act of violence between two individuals, whether it be a woman and a man, a man and a man, a woman and a woman, whatever it may be, and that's enough to put them on the hook for liability. That's not a fair characterization, Mr. Resnick. Because the question isn't putting someone on the hook. The question is whether witnessing abusive conduct of this magnitude in this setting can be said without further proof to be a plausible indicator of reckless disregard that that abusive conduct is associated with a commercial sex trafficking venture sufficient to allow discovery into what the true facts are. It's not a question of putting someone on the hook. Not at this stage of the case. Well, I understand that, but I think the question is what is the difference between a reasonable inference and an unreasonable inference? What is the difference between conceivability, an act that is consistent with an act that is mere possibility, and plausibility? And how does the court determine that? Through common sense and judicial experience. And it is our argument that what the Patels viewed, especially in paragraph 28, which to me is the most meaty or hefty allegation in the complaint, we certainly don't hide from that, but it only gives rise to the reasonable inference of an act of violence, a deplorable one at that, a despicable one at that, and perhaps a really morally reprehensible response, if true, but not reckless indifference to human trafficking or sexual exploitation for labor. And the court below did say that... Unless there is some sort of history there between the Patels and the claim. And there's no history plaid, Your Honor. Well, they alleged they knew each other or they must have known each other from the allegations of the high five and we're going to make some money. And the reputation of the hotel and the fact that he stayed there before. I mean, this is the sort of coloring that they've added to this to make it more likely that the Patels were harboring... I'm only dealing with the direct claims right now, not the indirect claims. Why isn't that a reasonable scenario here? Particularly when we know all of the statistics about sex trafficking and how it happens. In paragraph four, which is where there's the comment about this is a haven for illicit activity, I would ask the court to disregard that. I don't believe that there are sufficient factual allegations asserted to support that. The 475 phone calls that are mentioned, no description of the character of the phone calls, whether they were a response to a medical emergency, theft, burglary, disorderly conduct. No allegation as to who initiated the phone calls, hotel management, a guest, a neighbor. It's an amorphous allegation and it is an attempt to bias the reader throughout the complaint. It sets the stage for the complaint. Yes, most complaints do that. But I don't believe that the court has to credit and give those allegations the presumption of truth because they lack factual underpinning. There is no... It seems clear that there was not an investigation to understand what that was, what those 475 phone calls were, or to substantiate the allegation in any way with any facts that this place is a haven for illicit activity. And how you go from a... You take the reasonable inference that a haven for illicit activity equals or plausibly equates with a human trafficking venture, I believe is unreasonable. There are many allegations here that are consistent with, that could possibly lead to the conclusion that there's human trafficking going on, but not plausibly. And I just believe that if the court were to hold somebody, it would really open up any hotel, any employee, any manager to civil liability. To possible discovery in a lawsuit, as Judge Selya said. Do you have more? You have 3 minutes left. Your Honor, the only thing that I would add is, I briefly mentioned in my brief that there is no respondent superior or vicarious liability play. It is a theory of recovery. And despite the change from Connolly to Twombly, you still have to give defendants notice of the claims against them. And I don't believe there's sufficient allegations to give rise to the plausible claim that the Patels were acting within the scope of their employer at all times. Do you think the plausibility standard is restricted in its function to notice to the defendant? No, I do not. No, I do not. But it still has to, plausible allegations against a plausible defendant, and a defendant still needs notice of the causes of action that are being pled against them. And there is no point in this complaint where there's an attempt to make out a claim of respondent superior or vicarious liability. No, we're dealing with statutory language and not common law doctrine. Thank you, Your Honor. Thank you. Ms. Ellsworth. Thank you, Your Honor. I just wanted to address three brief points. First of all, looking at Section 1590 of the TVPA, which is another one of the direct violations alleged, there is a direct violation for obtaining harboring for purposes of labor or services, not for purposes of a commercial sex, coerced commercial sex act. And it's an important distinction because labor or services has been interpreted in the context of the TVPA as including unwanted sexual conduct with the perpetrator. And I'd point to the Kaufman case from the 11th Circuit and the Marcus case from the 2nd Circuit, both cited in our brief in support of that point. So we do think a direct violation has been made out even absent the commercial sex, which is, of course, what we understand to be the ultimate intent of Mr. McClain. But the trafficking had occurred when Ms. Riccio was in the hotel. It occurred when she was enticed to the hotel, and she was forced into the labor or services that were this unwanted sexual contact with Mr. McClain. The second point I would make as to knowledge, and in response to some of the questions about how one can allege knowledge, to a degree knowledge will always need to be inferred from a complaint against a defendant. And I'd point the court to the Todd decision in the 9th Circuit, which talks about how the knowledge of trafficking is knowledge that an established modus operandi will be used to cause someone to engage in commercial sex, as being the relevant knowledge standard for these purposes. I wanted to briefly address the discussion about allegations in paragraphs 3. I'm sorry. On modus operandi, are you suggesting that if other pimps and prostitutes had used the motel, that that's a basis for an inference about this couple? No, Your Honor. What I'm suggesting is that the modus operandi is Mr. McClain's actions of drugging Ms. Riccio, having her appear in a disoriented state, beating her and raving her in the room in order to coerce her into a commercial sex operation. So the modus operandi of what is sometimes known in the industry as grooming somebody to become a participant, an unwilling participant in a commercial sex operation. The allegations as to the motel's reputation were on information and belief, but I would point the Court to the language in paragraph 3 where it indicates that neighbors describe the hotel as a haven for prostitution, that they often see pimps and bloodied women in the hotel area, hotel parking lot, and that locals report it is an area where exploitation of women is common. So it is not simply a reputational slander, as my brother suggested. Can we go back to your first point, because I'm not at all sure I understand it. You said 1590 about labor or services, and you say that it includes a sexual act? Yes, Your Honor. Even though it has no connection to commerce? Correct, Your Honor. So forced sexual acts, again I point to the Marcus decision from the Second Circuit, there's no commercial sex acts at all in that case. One component of the forced labor that the victim was compelled to participate in in that case was unwanted sexual contact. Was that argument made to the District Court? I'm sorry, Your Honor? Was that argument made to the District Court? That labor or services, I believe it was in a brief. There was no oral argument held. But it was in your brief to the District Court? I believe it is, and I will correct myself on a 28-J letter if I'm incorrect about that. Okay, that's fine. And you may reply in a 28-J letter as to whether you found it in the briefs. Thank you very much. Thank you.